UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 08-CV-0012 (JFB) (ETB)

———————————

SUSAN RAMSTECK,

Plaintiff,

VERSUS

AETNA LIFE INSURANCE COMPANY,

Defendant.

———————————

**MEMORANDUM AND ORDER**
June 24, 2009

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Susan Ramsteck ("plaintiff") brings the instant action against defendant Aetna Life Insurance Company ("Aetna" or "defendant"), the administrator of her health insurance plan, under the Employee Retirement Insurance Security Act ("ERISA"), 29 U.S.C. § 1002 *et seq.*, alleging that defendant's denial of medical benefits for a procedure she underwent in May of 2006 was arbitrary and capricious and, therefore, in violation of the statute. Plaintiff seeks benefits allegedly due, an order clarifying her rights to future benefits under the terms of the plan, and damages in the sum of $65,689.50, in addition to interest and reasonable attorney's fees.

Defendant now moves for summary judgment. For the reasons set forth below, defendant's motion is granted. Specifically, after carefully reviewing the administrative record (as well as the deposition of Dr. A.R. Nourizadeh) in the light most favorable to the plaintiff, the non-moving party, the Court concludes that defendant provided plaintiff with a full and fair review of her claim, that defendant acted in accordance with the plan's terms, and that the defendant's denial of benefits was reasonable, supported by substantial evidence, and not erroneous as a matter of law. In short, the undisputed facts demonstrate that there is no basis to find that the decision was arbitrary and capricious. Accordingly, defendant's motion is granted.

I. BACKGROUND

A. Facts

The Court has taken the facts set forth below from the parties' affidavits, exhibits, and respective Local Rule 56.1 statements of facts, as well as the administrative record ("A.R.").[1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001). Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

1. Background

The corporation Citigroup provides medical benefits to its employees, their spouses or qualified domestic partners, and their eligible dependents under the Citigroup Health Benefit Plan (the "Plan"). (Defendant's Local Rule 56.1 Statement of Facts ("Def.'s 56.1") ¶ 1.) The Plan is funded by Citigroup and is not an insured plan. (*Id.* ¶ 2.) Plaintiff was an eligible dependent under the Plan. (*Id.* ¶ 3.)

The Plan is construed and administered in accordance with ERISA, and the Plan Administrator is the Plans Administration Committee of Citigroup Inc., which is the named "fiduciary" under ERISA for the Plan. (*Id.* ¶¶ 4-6.) Pursuant to an Administrative Services Contract with defendant, Citigroup delegated claims administration to defendant and designated defendant as the named fiduciary under ERISA, which permits defendant to exercise full discretionary authority to render benefits determinations, such as those implicated in the instant matter. (*Id.* ¶¶ 7-8.) Specifically, the Summary Plan Description states that

> . . . where delegated, the Claims Administrators have the exclusive discretionary authority to construe and interpret the provisions of the Plans and make factual determinations regarding all aspects of the Plans and their benefits, including the power and discretion to determine the rights or eligibility of employees and any other persons, and the amount of their benefits under the Plans, and to remedy ambiguities, inconsistencies or omissions, and such determinations shall be binding on all parties.

(Genet Aff. ¶ 2, Ex. 1.)

2. Details of the Plan

The Plan lists "Exclusions and Limitations" as follows:

> There are services and expenses that are not covered under the Non-HMO Health Plans. The following list of

---

[1] Defendant correctly notes that portions of plaintiff's affidavit in opposition to the instant motion improperly offer testimony regarding accepted practices in the medical community, a subject on which she is not competent to opine. Accordingly, to the extent that portions of plaintiff's affidavit attempt to offer expert medical testimony, those portions will not be considered by the Court, pursuant to Federal Rule of Evidence 702.

2

exclusions and limitations applies to your plan benefits unless otherwise provided under your HMO:

. . .

Experimental, investigational, or unproven services and procedures; ineffective surgical, medical, psychiatric, or dental treatments or procedures; research studies; or other experimental or investigational health care procedures or pharmacological regimes, as determined by the Claims Administrator, unless approved by the Claims Administrator in advance.

(Def.'s 56.1 ¶ 18.) The Glossary defines "Experimental, investigational, or unproven services" as:

Medical, surgical, diagnostic, psychiatric, substance abuse, or other health care services, technologies, supplies, treatments, procedures, drug therapies, or devices that, at the time the Health Plan makes a determination regarding coverage in a particular case, are determined to be:

. . .

Not demonstrated through prevailing peer-reviewed medical literature to be safe and effective for treating or diagnosing the condition or illness for which its use is proposed.

(*Id.* ¶ 19.) The Aetna Clinical Policy Bulletin: Back Pain – Invasive Procedures, No. 16 (the "CPB") provides the following clinical criteria for percutaneous lumbar discectomy:

VI. Percutaneous lumbar discectomy, manual or automated, is considered medically necessary for treatment of herniated lumbar discs when *all* of the following are met:

A. Member is otherwise a candidate for open laminectomy; and
B. Member has failed 6 months of conservative management; and
C. Diagnostic studies show that the nuclear bulge of the disc is contained within the annulus (i.e., the herniated disc is contained); and
D. Member has no previous surgery or chemonucleolysis of the disc to be treated; and
E. Member must have typical clinical symptoms of radicular pain correspondence to the level of disc involvement.

3

> Percutaneous lumbar discectomy is considered experimental and investigational for all other indications.
>
> Note: Clinical studies have not established any clinically significant benefit of use of a laser over use of the scalpel for percutaneous lumbar discectomy.

(*Id.* ¶ 20.) The CPB goes on to state:

> Aetna considers *any* of the following injections or procedures experimental and investigational:
>
> > <u>Intradiscal electrothermal annuloplasty</u> (IEA), also known as SpineCATH intradiscal electrothermal therapy (IDET), for relief of discogenic pain or other indications.

(*Id.*) The CPB is based upon a thorough review of medical literature examining back surgeries and includes an extensive bibliography of literature consulted to support its conclusions. (A.R. at 56-76.)

### 3. Plaintiff's Procedure at LSI and Ensuing Claims

During the period between May 15, 2006 and May 22, 2006, plaintiff underwent laser spinal surgery and received physical therapy services at the Laser Spine Institute ("LSI") in Tampa, Florida. (Def.'s 56.1 ¶ 11.) Plaintiff did not seek preliminary approval through the Plan for any of the services performed by LSI. (Genet Aff. ¶ 4.) On or about June of 2006, LSI submitted claims for reimbursement to defendant arising from services provided to plaintiff by Dr. James St. Louis, Dr. Michael W. Perry, Dr. Glenn A. Hamburg, and LSI in May of 2006. (Def.'s 56.1 ¶ 12.) By facsimile dated August 16, 2006, plaintiff sent defendant medical records related to the May 2006 procedures and services, as well as copies of "Explanation of Benefits" ("EOBs") forms provided to plaintiff by defendant and dated June 12, 13, 20 and 23 and August 4, 2006. (*Id.* ¶ 13.) On or about October 3, 2006, defendant determined that plaintiff's surgery and related physical therapy were "experimental and investigational" because there was inadequate evidence of the safety and efficacy of those treatment methods. (*Id.* ¶ 14.) Defendant advised plaintiff that she was entitled to appeal the determination that the claims were not medically necessary. (*Id.*) Defendant issued an EOB on October 4, 2006, specifically denying plaintiff's claims for services rendered on May 15-18 and 22, 2006. (*Id.* ¶ 15.) Defendant issued EOBs on October 6 and 17, 2006, denying related incidental expenses. (*Id.*)

### 4. Plaintiff's Level One Appeal

By facsimile dated March 26, 2007, plaintiff appealed defendant's denial of her claims, providing the medical reports she had previously sent on August 16, 2006, as well as copies of her lab reports from Quest Diagnostics and a "letter of medical necessity" from Dr. Jamie DiLorenzo of LSI, dated January 23, 2007. (*Id.* ¶ 16.) She also sent defendant a letter from LSI seeking an appeal for claims totaling $65,689.55, an undated letter from Dr. St. Louis, and claims

forms submitted for treatment at LSI. (*Id.*) The aforementioned documents comprised plaintiff's Level One Appeal. (*Id.*)

By letter dated April 19, 2007, defendant informed plaintiff that it was upholding its previous decision denying her claims. (*Id.* ¶ 17.) Specifically, defendant stated:

> A medical director, board certified in internal medicine, who was not involved in the original denial decision, has reviewed your appeal, including all supporting documentation submitted to date. This review confirms Aetna's initial determination that the services do not meet coverage criteria and is not eligible for reimbursement under the provisions of the plan.
>
> Aetna considers endoscopic, minimally invasive spinal surgery and laser ablation of the facet and capsular tissue to be experimental and investigational, as their relevance/effectiveness has not been conclusively demonstrated in the peer-reviewed medical literature. The associated pre-operative and post-operative charges related to an experimental and investigational procedure are also not eligible for reimbursement.
>
> . . .
>
> The clinical criteria upon which this decision was based is available, free of charge, upon request . . . . At your request, we will give you free of charge access to copies of all documents, records, and other information about your claim for benefits, including the specific rule, guideline, protocol, or other similar criterion that was used in making the decision, and the names of any clinical reviewers if applicable.
>
> If you disagree with this decision, <u>you may request a second level appeal</u>. If you choose to appeal, please forward any additional relevant information that you would like us to consider.

(A.R. at 226 (emphasis in original).) In arriving at that decision, defendant reviewed the original claim submission, plaintiff's appeal, the EOBs, the Operation Report, clinical notes, the letter from Dr. St. Louis, defendant's CPB, and the Plan. (Def.'s 56.1 ¶ 17.)

5. Plaintiff's Level Two Appeal

By facsimile dated May 29, 2007, LSI submitted, on plaintiff's behalf, a second appeal of defendant's determination. (*Id.* ¶ 21.) In addition to documents previously submitted, LSI provided a Letter of Appeal dated May 29, 2007, an American Medical Association ("AMA") letter dated January 28, 2002, and various claim forms related to procedures performed by LSI between May 15 and 22, 2006. (*Id.*) In reviewing

5

plaintiff's second appeal, defendant requested that Dr. A.R. Nourizadeh, a board-certified neurosurgeon, review the relevant documentation to determine whether plaintiff's surgery was medically proven. (*Id.* ¶ 22.) Dr. Nourizadeh concluded that plaintiff's procedure did not meet the clinical criteria for coverage, as set forth in the CPB. (*Id.*)

By letter dated June 22, 2007, defendant informed plaintiff that it was upholding its previous decision to deny medical benefits for plaintiff's surgery and associated procedures. (*Id.* ¶ 23.) On August 3, 2007, LSI submitted a "Request for Reconsideration and processing for Reimbursement." (*Id.* ¶ 24.) The Plan does not provide for any further appeals beyond the second level. (*Id.*) Defendant acknowledged LSI's request by letter dated August 25, 2007, and informed plaintiff that she had exhausted her internal rights of appeal under the Plan. (*Id.* ¶ 25.) Defendant directed plaintiff to the appropriate Aetna office to obtain an External Review and sent her a copy of the request form. (*Id.* ¶ 26.) Defendant did not receive the request form as required, and an External Review was not conducted before litigation commenced. (*Id.*) After plaintiff filed the instant action, Magistrate Judge Orenstein granted the parties time to proceed with the External Review. (*Id.*)

6. External Review and the Instant Action

Plaintiff submitted a completed Request for External Review on July 1, 2008, which included copies of defendant's June 22, 2007 Final Appeal Decision, letters from the third appeal request, and all letters and medical reports previously submitted by plaintiff in support of her claims. (*Id.* ¶ 27.) Defendant forwarded the Request, as well as the supporting documentation, to its External Review Unit for referral to an Independent Review Organization ("IRO"), which in turn selected the Medical Care Ombudsman Program ("MCOP") to examine the claim. (*Id.*)

MCOP reviewed LSI's medical notes, plaintiff's appeal letters, defendant's records, defendant's EOBs, defendant's CPB and the Plan, and determined, in a letter dated July 22, 2008, that the Plan should not cover the treatment because "percutaneous disc compression is still considered to be investigational with study results being inconclusive regarding outcome and complications. Diagnosis for which the procedure is appropriate are not clearly defined. Therefore, the surgery and any services supplied related to the procedure are considered to be not indicated." (*Id.* ¶ 28.) MCOP further concluded that there was insufficient clinical data suggesting any health benefit to the procedure. (*Id.*) Finally, MCOP determined that the procedure was no more effective than available standard therapy. (*Id.*) The outcome of the External Review is final and binding upon Aetna, the Contractholder (Citigroup), and the Plan. (*Id.* ¶ 29.)

At a hearing held before Magistrate Judge Orenstein on September 15, 2008, plaintiff's counsel informed the court that counsel for both parties had agreed to the deposition of Dr. Nourizadeh in order for plaintiff to explore "what [Dr. Nourizadeh] used to support [his opinion] and what his reasoning was and what his authorities were." (Kenigsberg Aff. dated May 7, 2009, Ex. 1.) By letter dated June 12, 2008, defense counsel had advised the court that it would consent to this deposition for that limited purpose only, "with the understanding that Aetna reserves

6

all rights to object to any expansion of the administrative record based upon this deposition." (*Id.*, Ex. 2.)

B. Procedural History

On November 28, 2007, plaintiff filed her complaint in the Supreme Court of the State of New York, Suffolk County. By notice of removal dated January 2, 2008, defendant removed this action to the United States District Court for the Eastern District of New York. Defendant filed an answer on January 8, 2008. On March 3, 2009, defendant filed the instant motion. Plaintiff filed her opposition on April 20, 2009. Defendant submitted its reply on May 7, 2009. Oral argument was heard on June 19, 2009. This matter is fully submitted.

II. STANDARD OF REVIEW

A. ERISA and Administrative Review

It is well-settled that "[w]hen an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, a district court must review deferentially a denial of benefits challenged under [ERISA] § 502(a)(1)(B)." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Specifically, "reviewing courts can disturb [the fiduciary's] interpretations and actions only if they are arbitrary and capricious." *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 646 (2d Cir. 2005). "A decision is 'arbitrary and capricious [if it] is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* (alteration in original) (quoting *Miller*, 72 F.3d at 1070); *see also Williams v. Delta Family - Case Disability & Survivorship Plan*, No. 07 Civ. 5329 (CPS), 2009 U.S. Dist. LEXIS 814, at *20 (E.D.N.Y. Jan. 7, 2009) (stating that, under this standard, "the administrator's decision will be upheld so long as it falls somewhere on a continuum of reasonableness – even if on the low end.") (internal quotation omitted). The Second Circuit has clearly articulated that "because this standard is highly deferential . . . 'the trial court should not conduct a *de novo* hearing on a rejected applicant's eligibility for benefits.'" *Zervos*, 277 F.3d at 646 (quoting *Miles v. N.Y. State Teamsters Conference Pension and Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 599 (2d Cir. 1983)); *see also Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) ("This scope of review is narrow, thus we are not free to substitute our own judgment for that of the [plan administrator] as if we were considering the issue of eligibility anew."); *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) ("The court may not upset a reasonable interpretation by the administrator.") (citations omitted). Specifically, the Second Circuit has noted that, under this standard, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control. Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *McCauley v. First Unum Life Ins.*, 551 F.3d 126, 132-33 (2d Cir. 2008) (internal quotation and citation omitted). Here, plaintiff does not dispute that Aetna had discretionary authority to construe the terms of the Plan, and so the Court may only reverse Aetna's decision if it was arbitrary and capricious.

7

B. Summary Judgment

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

It is appropriate for courts reviewing a challenge of denial of benefits under ERISA to do so on a motion for summary judgment, which "provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record." *Gannon v. Aetna Life Ins. Co.*, No. 05 Civ. 2160, 2007 WL 2844869, at *6 (S.D.N.Y. Sept. 28, 2007); *see also Alfano v. Cigna Life Ins. Co. of N.Y.*, No. 07 Civ. 9661(GEL), 2009 WL 222351, at *12 (S.D.N.Y. Jan. 30, 2009); *Suarato v. Bldg. Servs. 32BJ Pension Fund*, 554 F. Supp. 2d 399, 414-15 (S.D.N.Y. 2008) (collecting cases). Upon such a motion, "the contours guiding the court's disposition . . . are necessarily shaped through the application of the substantive law of ERISA." *Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 780 (S.D.N.Y. 1993). Specifically, "in a summary judgment motion, 'the arbitrary and capricious standard requires that [the court] ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could

support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits.'" *Williams v. Delta Family - Case Disability & Survivorship Plan*, No. 07 Civ. 5329 (CPS), 2009 U.S. Dist. LEXIS 814, at *19 (E.D.N.Y. Jan. 7, 2009) (alteration in original) (quoting *Davis v. Comm. Bank of N.Y.*, 275 F. Supp. 2d 418, 425 (S.D.N.Y. 2003)).

### III. DISCUSSION

Defendant argues that summary judgment is warranted because the undisputed evidence demonstrates that its denial of plaintiff's claim was not arbitrary and capricious. Plaintiff submits, however, that the denial of her claims is not reasonably supported by the evidence, which she claims includes the administrative record, as well as the deposition testimony of the physician who reviewed her claim at the Level Two Appeal stage. Therefore, as a threshold matter, the Court must first determine whether consideration of that deposition is warranted under the circumstances of this case. As set forth *infra*, the Court concludes that plaintiff has failed to demonstrate "good cause" to review that testimony but, even assuming *arguendo* that the Court were to consider it, the Court would still find as a matter of law that there is no basis to conclude that the decision of the Plan Administrator was arbitrary and capricious.

### A. Evidence Outside the Administrative Record

In appealing Aetna's denial of benefits, plaintiff urges the Court to consider the deposition testimony of Dr. Nourizadeh, the physician who reviewed plaintiff's claim at the Level Two Appeal stage of the internal review process. Defendant argues that the deposition should not be considered because it is not a part of the administrative record. While "[t]he decision whether to consider evidence from outside the administrative record is within the discretion of the district court . . . the presumption is that judicial review 'is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence.'" *Muller v. First Unum Life Ins.*, 341 F.3d 119, 125 (2d Cir. 2005) (quoting *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 66 (2d Cir. 1997)); *see Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) ("We have repeatedly said that a district court's decision to admit evidence outside the administrative record is discretionary, 'but which discretion ought not to be exercised in the absence of good cause.'") (quoting *Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 289 (2d Cir. 2000)); *see also Rubino v. Aetna Life Ins. Co.*, No. 07 Civ. 377, (LDW) (AKT), 2009 U.S. Dist. LEXIS 27373, at *6 (E.D.N.Y. Mar. 31, 2009) ("In an ERISA case, in general, under the arbitrary and capricious standard of review, a court's review of the determination of benefits under the applicable plan is limited to the evidence contained in the administrative record."); *Schalit v. Cigna Life Ins. Co. of New York*, No. 07 Civ. 0476, 2007 WL 2040587, at *2 (S.D.N.Y. July 12, 2007) (same); *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180, 2005 U.S. Dist. LEXIS 9033, at *9-10 (S.D.N.Y. May 13, 2005) (same). "This rule is consistent with the fact that nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators and with the ERISA goal of prompt resolution of claims by the fiduciary." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) (internal quotation and citation omitted).

When determining whether "good cause" exists, the Second Circuit has framed the inquiry thus: "Where sufficient procedures for initial or appellate review of a claim are lacking, there exist greater opportunities for conflicts of interest to be exacerbated and, in such a case, the fairness of the ERISA appeals process cannot be established using only the record before the administrator. In such circumstances, . . . the district court may assume an active role in order to ensure a comprehensive and impartial review of the case . . . ." *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 296 (2d Cir. 2004). Though consideration of outside materials most often arises when a claimant alleges a conflict of interest, district courts may also find "good cause" where the plan administrator's review processes are compromised. *See, e.g., Locher*, 389 F.3d at 295 (in discussing *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61 (2d Cir. 1997), stating that "'good cause' existed not merely because the claims reviewer and claims payor were the same entity, but also because the procedures employed in arriving at the claim determination were flawed"); *Juliano*, 221 F.3d at 289 ("good cause" found where insurer did not inform claimant of reason for denying claim in notice). Permissible inquiries that fall outside the bounds of the administrative record can include, but are not limited to, "the criteria of review by the administrator; . . . the factual basis for the defendant's decision regarding benefits; . . . the competent and complete evaluation of medical records; . . . and the physician's report and testimony," when, of course, good cause is demonstrated. *Reittinger v. Verizon Commc'ns, Inc.*, Civ. No. 1:05-CV-1487 (FJS/RFT), 2006 U.S. Dist. LEXIS 83293, at *9 n.2 (N.D.N.Y. Nov. 15, 2006).

Plaintiff, in her moving papers, fails to acknowledge that the testimony of Dr. Nourizadeh is not a part of the administrative record, and, as such, may not be considered absent a showing of good cause. She, therefore, has provided the Court with no legal argument as to why good cause exists; for example, she does not allege that the testimony should be examined because Dr. Nourizadeh was biased in his review of her claim, or because he deviated from defendant's internal review procedures, or because he failed to examine the relevant medical documentation related to her claim. On the contrary, plaintiff simply disagrees with his conclusion, as well as the process that informed it.[2] Accordingly, it appears that she offers the testimony to refute the reasonableness of the Plan Administrator's decision, an inquiry that can be conducted based solely on the materials contained within the administrative record. *See, e.g., Trussel v. Cigna Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008) ("[T]he Second Circuit has found that '[o]n such an issue . . . which is *distinct* from the reasonableness of the plan administrators' decision, the district court will not be confined to the administrative record.") (emphasis added). Therefore, plaintiff has failed to satisfy the "good cause" requirement necessary to introduce this testimony for review by the Court. *See Kruk v. Metro. Life Ins. Co., Inc.*,

---

[2] In fact, plaintiff had indicated, when first seeking to take the doctor's testimony, that the scope of her inquiry would focus on the merits of his medical determination. (*See, e.g.,* Conference Before Magistrate Judge Orenstein on September 15, 2008, Kenigsberg Aff. dated May 7, 2009, Ex. 1, at 3 (PLAINTIFF'S COUNSEL: "That's one of the subjects of inquiry that I would really like to know . . . what [Dr. Nourizadeh] used to support [his opinion] and what his reasoning was and what his authorities were.").)

No. 3:07-CV-01533 (CSH), 2009 WL 1481543, at *8 (D. Conn. May 26, 2009) (ruling, under the more generous "good cause" discovery standard, that "[plaintiff] may also conduct the remaining depositions of medical or health care personnel, but these must be limited to the issue of whether this case constituted a departure from the standard procedures for determining . . . benefits, and the issue of whether the personnel have a relationship with [the Plan Administrator] that would call their medical evaluations into question. These depositions may not venture into the actual, medical merits underlying those determinations.").[3] However, even assuming *arguendo* that plaintiff had made a sufficient showing of "good cause," consideration of Dr. Nourizadeh's testimony would not change the Court's determination that the Plan Administrator's decision was reasoned and supported by substantial evidence, as set forth below.

B. Denial of Plaintiff's Claim

Defendant argues that the evidence submitted, viewed in the light most favorable to the plaintiff, supports a rational finding that the Plan Administrator did not act in an arbitrary and capricious manner in denying plaintiff's claim because the claim determination was reasonable and plaintiff was granted a full and fair review. Plaintiff submits that the denial was arbitrary and capricious because it "rest[ed] on a single conclusory paragraph in a single e-mail message and [wa]s not supported by substantial evidence." (Plaintiff's Memorandum of Law, at 4.) Having conducted a thorough review of the administrative record, as well as the deposition testimony of Dr. Nourizadeh, the Court disagrees, and finds no basis to disturb the defendant's determination under the "arbitrary and capricious" standard. In doing so, the Court does not substitute its independent judgment for that of the Plan Administrator, but rather examines whether the Plan Administrator's decision was supported by "such evidence that a reasonable mind might accept as adequate to support the conclusion reached." *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003). As discussed below, plaintiff has failed to raise a genuine issue of material fact on this issue, and defendant is clearly entitled to summary judgment based upon the undisputed facts.

1. The Plan Administrator's Decision Was Reasonable[4]

The Second Circuit has stated that "as a matter of general insurance law, the insured has the burden of proving that a benefit is covered, while the insurer has the burden of proving that an exclusion applies, and these principles are too applicable in ERISA cases."

---

[3] As referenced above, the standard for permitting discovery to supplement the administrative record in an ERISA case is far less stringent than the standard for actually considering that outside evidence when reviewing the decision of the Plan Administrator, under either the *de novo* or the "arbitrary and capricious" standard. *See Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 230 (E.D.N.Y. 2008) ("The Court agrees with other courts within the Second Circuit that in order to justify discovery beyond the administrative record, Plaintiff need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement.") (internal quotation and citation omitted).

[4] At oral argument, plaintiff's counsel confirmed that plaintiff was not challenging the reasonableness of the criteria contained in the CPB, but rather Aetna's application of those criteria to her circumstances.

*Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256-57 (2d Cir. 2004) (citations omitted). An insurer may satisfy its burden under the arbitrary and capricious standard by demonstrating that it gave a plan exclusion a reasonable interpretation. *See, e.g., Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995). When a party administering a claim does so as a fiduciary within the meaning of ERISA, it must act pursuant to the terms of the Plan.[5] *See* 29 U.S.C. § 1102. In construing those terms and their application to the facts, district courts must "interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Critchlow*, 378 F.3d at 256. To that end, "unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning." *Strum v. Siegal Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 235, 244 n.6 (2d Cir. 2007) (citations omitted).

In the instant matter, Aetna's CPB states that the surgical procedure plaintiff underwent, "[p]ercutaneous lumbar discectomy, manual or automated, is considered medically necessary for treatment of herniated lumbar discs" when specific criteria are met. Otherwise, it "is considered experimental and investigational for all other indications." The Plan's plain language excludes "[e]xperimental, investigational, or unproven services and procedures," which are also more generally defined as those that are "determined to be . . . not demonstrated through prevailing peer-reviewed medical literature to be safe and effective for treating or diagnosing the condition or illness for which its use is proposed." In denying plaintiff's claim for reimbursement for this procedure and related treatment, Aetna stated that the procedure was "experimental and investigational" because there was inadequate evidence of the safety and efficacy of those treatment methods. Upon plaintiff's appeal of that decision, a physician board-certified in internal medicine and employed by defendant, but not involved in the initial denial of plaintiff's claim, reviewed the relevant records and concluded that the procedures were "experimental and investigational" because their "relevance/effectiveness ha[d] not been conclusively demonstrated in the peer-reviewed literature," as set forth in Aetna's CPB. A second reviewing physician, also uninvolved with the initial denial of plaintiff's claim, also affirmed the denial after determining that plaintiff failed to satisfy the criteria for "medical necessity" as set forth in the CPB. Both physicians' reliance upon the CPB was reasonable in light of the fact that the document includes a comprehensive review of medical literature examining back surgeries, as well as an extensive bibliography of literature consulted. Finally, an IRO, engaged for purposes of an External Review, confirmed that Aetna's interpretation of the Plan terms was reasonable and affirmed the denial of plaintiff's claim.

---

[5] The Supreme Court has further stated that if a plan fiduciary "is operating under a conflict of interest, that conflict must be weighed as a factor" when determining whether its determination was arbitrary and capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "Courts have found substantial potential for conflict to exist where a plan administrator or fiduciary serves the dual roles of a decision-maker with regard to the granting or denial of claims and an insurer which must constantly strive to make its revenues exceed its costs." *Velez v. Prudential Health Care Plan of N.Y., Inc.*, 943 F. Supp. 332, 339 (S.D.N.Y. 1996). However, because it is undisputed in the instant matter that Aetna is not a conflicted fiduciary (as it does not fund the benefits of the Plan but simply administers them), the Court need not weigh conflict as a factor in its analysis.

There is no indication that the reviewing physicians or the IRO failed to examine the appropriate documents in arriving at their conclusions, nor has plaintiff provided *any* contravening, competent evidence[6] (let alone evidence strong enough to suggest defendant's determination was unreasonable) demonstrating that the procedures in question were accepted as effective in peer-reviewed literature and, therefore, not investigative or experimental. *See, e.g., Fay v. Oxford Health Plan*, 287 F.3d 96, 108 (2d Cir. 2002) ("Despite [plaintiffs'] presentation of two qualified experts' opinions to the contrary, this Court cannot find Oxford's determination of medical necessity without reason, unsupported by substantial evidence or erroneous as a matter of law.") (internal quotations and citations omitted). In sum, the undisputed facts demonstrate that Aetna's decision was reasonable and consistent with the plain language of the Plan which specifically excludes from coverage "experimental and investigational" procedures. *See Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir. 1996) (A court "may not upset a reasonable interpretation by the administrator."); *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271-72 (2d Cir. 1995) (same).

### 2. Plaintiff Received a Full and Fair Review of Her Claim

As the Supreme Court and the Second Circuit have recognized, Section 1133 of ERISA explicitly requires employee benefit plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004) (quoting 29 U.S.C. § 1133(2)); *see Krauss*, 517 F.3d at 630 n.10. A fiduciary may provide such a review by providing a claimant with "notice of the basis of the initial denial of her claim; notifying her that she was entitled to request access to relevant information; allowing her to submit additional evidence to the Appeals Committee; and making a benefits determination based upon all the evidence of record." *Perezaj v. Bldg. Serv. 32b-J Pension Fund*, Case No. CV-04-3768, 2005 U.S. Dist. LEXIS 17178, at *18 (E.D.N.Y. Aug. 17, 2005).

In the instant matter, it is undisputed that defendant: 1) provided plaintiff with notice for the basis of the denial of her claim when it informed her, by letter dated October 3, 2006, that the procedures in question were deemed "experimental and investigational"; 2) informed plaintiff that she could request additional information when it stated, by letter dated April 22, 2007: "At your request, we will give you free of charge access to copies of all documents, records, and other information about your claim for benefits, including the specific rule, guideline,

---

[6] As discussed in more detail *infra*, plaintiff's conclusory assertions that the procedure is accepted within the medical community, as evidenced by coverage by other health insurance plans, is insufficient to raise a genuine issue of material fact. First, plaintiff is a layperson and thus not competent to testify regarding the generally accepted standards within the medical community. Further, plaintiff has failed to provide any evidentiary and/or legal support for why the coverage by other carriers would render Aetna's determination unreasonable under controlling case authority. In fact, plaintiff's counsel conceded at oral argument, when the Court noted the conclusory nature of LSI's assertion regarding other carriers and patients, that no specific evidence was contained in the administrative record to support the conclusory statement or to undermine Aetna's determination in this particular case.

13

protocol, or other similar criterion that was used in making the decision, and the names of any clinical reviewers if applicable"; 3) accepted additional evidence from plaintiff at both the Level One and Level Two Appeal stages; and 4) arrived at its decision by reviewing all of the available evidence, including all additional documentation submitted by plaintiff. Not only that, defendant provided plaintiff with three different levels of appeal, the first two of which were conducted by board-certified physicians uninvolved with the initial denial of her claim, and the third of which was conducted by an external reviewing body. Accordingly, plaintiff's suggestion that she was not afforded a full and fair review of her claim is not supported by the evidence and, therefore, lacks merit.

### 3. Plaintiff's Arguments

Plaintiff argues that defendant's denial of her claim was arbitrary and capricious because the procedure "was medically necessary to resolve [her] symptoms and [her] further progression toward permanent nerve damage," (Plaintiff's Opposition ¶ 20) and is accepted within the medical community as an effective treatment for her condition. (*Id.* ¶¶ 26-28.) Furthermore, plaintiff submits that Dr. Nourizadeh's application of the CPB criteria was unreasonable. For the reasons set forth below, the Court finds plaintiff's arguments unavailing.

First, despite plaintiff's argument that the procedure in question was "medically necessary," as demonstrated by letters in support submitted by her treating physicians,[7]

the administrative record conclusively demonstrates that plaintiff did not meet the clinical criteria set forth in the CPB in order for the procedure to be covered as such. (*See* A.R. at 280.) It is well-settled that ERISA grants the Plan Administrator the discretionary power to interpret the terms of its Plan in a reasonable manner, which includes the application of that clinical criteria. As plaintiff has not suggested that defendant interpreted those terms in a manner inconsistent with their plain meaning, or ignored documentation indicating that she *has* satisfied the CPB's clinical criteria, her argument that the procedure "worked" is not legally cognizable under controlling case authority.[8]

Second, plaintiff's argument that the procedures at issue are covered by other insurance plans and, thus, should not be regarded as "experimental and/or investigational" is equally unavailing. (*See, e.g.,* Plaintiff's Opposition ¶ 27 ("Many other insurance companies recognize and pay for laser surgery and that indisputable fact is contained within the Administrative Record of my claim.").) Plaintiff has provided the Court with no legal basis, nor can she, for the proposition that one insurance company's coverage of a procedure renders another

---

[7] The Court notes that ERISA does not require a Plan Administrator to defer to the conclusions of a treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833-34 (2003).

[8] Defendant disputes that the procedure was effective in treating plaintiff's medical condition, citing to her counsel's representation, at a hearing before Magistrate Judge Orenstein, that the procedure "worked for a while," but plaintiff was "consulting with doctors and determining a future course." (Hearing Before Magistrate Judge Orenstein on September 15, 2008, Kenigsberg Aff. dated May 7, 2009, Ex. 1, at 17.) However, as stated *supra*, plaintiff's subjective belief about the medical necessity of the procedure in question is irrelevant to the instant analysis.

company's refusal to cover that procedure arbitrary and capricious under ERISA; the Court must confine its analysis to whether the Plan Administrator in the instant action applied the terms of the Plan to plaintiff's claim in a reasonable manner, which this Court has concluded that it did. Whether the procedures at issue are covered by the terms of other medical insurance plans is of no consequence to the instant matter. Furthermore, though plaintiff purports to cite to evidence within the administrative record of "expert information and medical literature establishing the medical necessity and soundness of the treatment provided," (*id*. ¶ 25), those citations actually refer to correspondence from LSI requesting that Aetna cover the cost of the procedures, rather than any evidence suggesting that peer-reviewed medical literature has acknowledged the treatment to be safe and effective. In fact, plaintiff's counsel conceded at oral argument that, beyond the conclusory statement by LSI, nothing in the administrative record supports his client's position in this regard. Therefore, plaintiff's conclusory assertion that the relevant procedure is not "experimental and/or investigational" does not provide the Court with any legal basis to upset the Plan Administrator's determination to the contrary.

Finally, plaintiff challenges the review process by which Aetna affirmed the denial of benefits, specifically attacking the determination of Dr. Nourizadeh, the reviewing physician at the Level Two Appeal stage. (*See, e.g.,* Plaintiff's Opposition ¶ 49 ("Th[e] mindless application of [defendant's CPB] lacked any independent analysis, reasoning or thought. Dr. Nourizadeh did not consider the actual merits of the medical treatment [plaintiff] received; all he did was check a book given to him by his employer and report what was found in that book.").) However, a full review of the administrative record, as well as Dr. Nourizadeh's testimony, conclusively demonstrates that 1) he possessed ample credentials to review plaintiff's claim;[9] and 2) he applied the terms of the Plan to the available evidence in a reasonable manner. Further, even assuming *arugendo* that Dr. Nourizadeh's review was unreasonable, plaintiff was able to appeal the doctor's decision to an external reviewing body, which then could have corrected any erroneous determinations. *See, e.g., Suren v. Met. Life Ins. Co.*, 07-CV-4439 (JG) (RLM), 2008 U.S. Dist. LEXIS 99442, at *28 (E.D.N.Y. Sept. 26, 2008) (stating, in finding that plaintiff received a "full and fair review," that "even if there were procedural shortcomings with respect to the first appeal, any such deficiencies were rendered harmless by the provision of a second appeal"). The IRO affirmed the determination of Dr. Nourizadeh.[10] Accordingly, the Court finds

---

[9] Plaintiff's suggestion that Dr. Nourizadeh lacked the credentials to review her claim because – 1) he was born outside of the United States; 2) he is bilingual; 3) he is licensed to practice in Connecticut, but not New York; 4) he is employed by defendant; and 5) his position with defendant is not a full-time one – is meritless, as it is undisputed that Dr. Nourizadeh is board-certified in neurology, the specialty area implicated by plaintiff's claim. *See, e.g., Suren*, 2008 U.S. Dist. LEXIS 99442, at *33 ("[Plaintiff]'s arguments that MetLife failed to utilize proper medical professionals . . . [is] similarly unavailing. MetLife's independent physician consultants were each Board-certified in one or more specialty areas that were relevant to [plaintiff]'s diagnoses and conditions. That they were paid consultants does not disable MetLife from considering their opinions in making benefits decisions.").

[10] Plaintiff's counsel suggested at oral argument that the outcome of the external review should not be considered as a part of the administrative record and cited to the decision of *Bernstein v. Capitalcare, Inc.*, 70 F.3d 783 (4th Cir. 1995) as

15

that Dr. Nourizadeh's review of plaintiff's claim provides no grounds for reversing the determination of the Plan Administrator, because his decision was reasonable, and the appeals process offered an additional safeguard in the event that his decision was erroneous.

In sum, viewing both the administrative record and the deposition testimony of Dr. Nourizadeh in the light most favorable to plaintiff, the Court concludes that there is no basis, as a matter of law, to find that defendant acted arbitrarily and capriciously in denying plaintiff's claim for benefits. On the contrary, the undisputed evidence demonstrates that she received a full and fair review of that claim and that defendant applied the terms of the Plan to plaintiff's claim in a reasonable manner.

---

persuasive authority in support of that position. This argument is without merit. First, that opinion is inapposite to the case at bar, as the administrative record there was insufficient to support the Plan Administrator's denial of benefits and the district court improperly accepted evidence *post hoc* submitted by the defendant to support its benefit determination. In the instant matter, not only did the administrative record support Aetna's determination, but the adjudicator of the external review accepted evidence from both sides in reviewing that determination, rather than simply accepting *post hoc* submissions from Aetna. Accordingly, the *Bernstein* case does not support plaintiff's position. Moreover, plaintiff's counsel specifically consented to a stay of this lawsuit in order for the external review to be conducted, and now only objects to the Court's consideration of it because the external review supported defendant's position. Finally, even assuming *arguendo* that the Court did not consider the results of the external review as a part of the administrative record, it would still find that the Plan Administrator's decision, after two levels of appeal, was a reasonable application of the Plan terms and supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion for summary judgment and dismisses plaintiff's claim with prejudice. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated:   June 24, 2009
         Central Islip, New York

\* \* \*

The attorney for plaintiff is Ralph A. Hummel, Esq., 137 Woodbury Road, Woodbury, New York, 11797. The attorneys for defendants are Norman L. Tolle and Jay Kenigsberg, Esqs., Rivkin Radler LLP, 926 RexCorp Plaza, Uniondale, New York, 11556.